**GREAT LAKES INSURANCE SE**,

        Plaintiff,

v.

**BOAT RENTAL MIAMI, INC.**; *et al.*,

        Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff/Counter-Defendant, Great Lakes Insurance

SE's ("Great Lakes['s]") Partial Motion to Dismiss Counts II and IV of BRM and MBR's

Amended Counterclaim and Motion to Reconsider Court's Choice-of-Law Ruling [ECF No. 82].

Defendants/Counter-Plaintiffs, Boat Rental Miami, Inc. ("BMR") and Miami Boat Rental, Inc.

("MBR") (collectively "Counter-Plaintiffs") filed an Opposition [ECF No. 87]; to which Great

Lakes filed a Reply [ECF No. 88].  The Court has carefully considered Counter-Plaintiffs' Answer

to Plaintiff's Third[1] Amended Complaint, Affirmative Defenses, and Amended Counterclaim

("Amended Counterclaim") [ECF No. 79], the parties' written submissions, the record, and

applicable law.

## I.    BACKGROUND

This is an insurance coverage dispute concerning Great Lakes's duty to defend Counter-

Plaintiffs in a state-court personal injury lawsuit filed by Defendant, Claudia Baerlin-Gallegos.

(*See generally* FAC).

---

[1] While Counter-Plaintiffs title the document as an answer to the Third Amended Complaint, it is, in fact, an answer to Great Lakes's Fourth Amended Complaint ("FAC") [ECF No. 75].

Great Lakes is a German corporation with its principal place of business in Munich, Germany. (*See* FAC ¶ 6). Counter-Plaintiffs are Florida corporations with their principal places of business in Miami, Florida. (*See* Am. Countercl. ¶¶ 1–2). Counter-Plaintiffs are in the business of providing vessels for rent at the Bayside Marina in Miami, Florida. (*See id*. ¶¶ 7–8). While distinct legal entities, BRM and MBR are wholly owned by Edgardo Velez, share a common office, provide the same vessel operators, and dock their vessels on the same pier at the Bayside Marina. (*See id*. ¶¶ 6–7).

Great Lakes issued an insurance policy to MBR (the "MBR Policy") providing Hull and Machinery and Third Party Liability coverage from October 11, 2016 through October 11, 2017 (*see* FAC ¶ 10); and issued a separate insurance policy to BRM (the "BRM Policy") providing Hull and Machinery and Third Party Liability coverage for the period of December 4, 2016 through December 4, 2017 (*see id*. ¶ 12).[2] The MBR Policy (FAC, Ex. A, MBR Policy [ECF No. 75-1]) is referred to as a "Fleet Policy" and provides coverage for all vessels listed in the Policy's schedule (*see* Am. Countercl. ¶ 13); while the BRM Policy (FAC, Ex. B, BRM Policy [ECF No. 75-2]) is a "Commercial Yacht Policy" (*see* Am. Countercl. ¶ 11).[3] BRM is not named as an insured or additional insured on the MBR Policy, nor is MBR named as an insured or additional insured on the BRM Policy. (*See* FAC ¶¶ 16–17).

Counter-Plaintiffs allege Velez — the sole owner of MBR and BRM — mistakenly completed the MBR Policy application. (*See* Am. Countercl. ¶ 14). Velez is not sophisticated in

[2] The issuing entity appears on the MBR Policy and BRM Policy as "Great Lakes Reinsurance (UK) SE." (FAC ¶ 14). On December 30, 2016, Great Lakes Reinsurance (UK) SE redomiciled from London, United Kingdom to Munich, Germany and changed its name to Great Lakes Insurance SE. (*See id*.). Great Lakes Reinsurance (UK) SE and Great Lakes Insurance SE are the same company and share the same rights, duties, and obligations. (*See id*.).

[3] Great Lakes separately issued MBR a Commercial Yacht Policy which is not relevant to this action. (*See* Am. Countercl. ¶¶ 11–12).

matters of insurance and incorrectly listed MBR as the named insured on the Policy, as well as the owner of each of the fleet vessels. (*See id*. ¶¶ 14–15). The application presented inaccurate information, as BRM was the actual owner of the fleet vessels listed on the MBR Policy schedule and should have been included in the application as a named insured. (*See id*. ¶¶ 16–18). While BRM owns the fleet vessels, MBR nonetheless has an insurable interest in the BRM vessels because of its pecuniary interest in offering the fleet vessels for charter. (*See id*. ¶ 21). Counter-Plaintiffs insist the error was irrelevant to the insurance risk, as the corporations rent the same fleet of vessels and share the same office, staff, and safety procedures. (*See id*. ¶ 19).

The MBR Policy can be updated by endorsement to provide coverage to new vessels and to remove vessels which have been sold and no longer need coverage. (*See id*. ¶ 22; *see also* MBR Policy 26–31). Several vessels added to the MBR Policy were owned by BRM; and despite BRM's ownership, Great Lakes agreed to provide coverage for these vessels by issuing endorsements to the MBR Policy and collecting premiums to insure the vessels. (*See* Am. Countercl. ¶¶ 27–28). The MBR Policy provides coverage for a 2017 25' Nauticstar vessel with hull identification number JNT25958J617, which was added by endorsement as a scheduled vessel under the MBR Policy. (*See id*. ¶ 37).

On July 2, 2017, MBR rented the Nauticstar to a friend of Baerlin-Gallegos. (*See id*. ¶¶ 29, 37). While MBR issued the rental contract, the Nauticstar is owned by BRM. (*See id*. ¶ 29). While preparing to board the Nauticstar, Baerlin-Gallegos slipped and fell on the dock. (*See id*. ¶ 33). Baerlin-Gallegos was not helped, and her injury was exacerbated as a result.[4] (*See id*. ¶ 34).

On September 22, 2017, Baerlin-Gallegos filed a personal injury lawsuit against BRM in state court. (*See id*. ¶ 38). Although it was apparent the state-court lawsuit was against BRM and

---

[4] Counter-Plaintiffs dispute Baerlin-Gallegos's factual allegations. (*See* Am. Countercl. ¶ 35).

involved a vessel insured by the MBR Policy, Great Lakes began defending the action without a reservation of rights. (*See id*. ¶¶ 39, 42). It was not until February 11, 2019, that Great Lakes sent BRM its first Reservation of Rights Letter [ECF No. 75-6] advising BRM there may not be coverage for the loss and reserving Great Lakes's right to withdraw its defense and deny indemnity to BRM. (*See* FAC ¶ 37). One week later, on February 18, 2019, Great Lakes filed its Complaint for Declaratory Relief [ECF No. 1] against BRM and Baerlin-Gallegos in this action. Despite Great Lakes's knowledge the BRM-owned Nauticstar was insured under the MBR Policy, it did not raise this issue in its original Complaint. (*See* Am. Countercl. ¶ 53; *see generally* Compl.).

Following a mediation in the state-court action, Great Lakes sent BRM a Supplemental Reservation of Rights Letter [ECF No. 75-7] advising BRM there may not be coverage for the loss because BRM is not an insured under the MBR Policy. (*See* Am. Countercl. ¶ 55). On April 18, 2019, Great Lakes sent BRM a Second Supplemental Reservation of Rights Letter [ECF No. 75-8] and filed an Amended Complaint for Declaratory Relief [ECF No. 10] including MBR as a Defendant in this action. After Great Lakes filed the Amended Complaint, Baerlin-Gallegos filed an amended complaint [ECF No. 79-3] in the state-court action to include MBR as a defendant in her state-court lawsuit. (*See* Am. Countercl. ¶ 57).

On June 27, 2019, Great Lakes filed a Third Amended Complaint [ECF No. 41]. On July 12, 2019, Counter-Plaintiffs filed an Answer to Plaintiff's Third Amended Complaint, Affirmative Defenses, and Counterclaim [ECF No. 48]; to which Great Lakes filed a Partial Motion to Dismiss Counts II and IV of BRM and MBR's Counterclaim [ECF No. 54]. Following a Hearing [ECF No. 59] — discussed below — the Court entered an Order [ECF No. 60] granting in part the Partial Motion to Dismiss and allowing Counter-Plaintiffs to file an amended counterclaim. (*See* Sept. 4, 2019 Order). On October 21, 2019, Great Lakes filed a Fourth Amended Complaint; to which

BRM and MBR filed their Answer and Amended Counterclaim on November 6, 2019.

The Amended Counterclaim states four claims: declaratory judgment against Great Lakes (Count I); breach of fiduciary duty on behalf of MBR (Count II); equitable estoppel (Count III); and reformation (Count IV). (*See generally* Am. Countercl.). On November 20, 2019, Great Lakes filed the present Partial Motion to Dismiss Counts II and IV of the Amended Counterclaim for failure to state claims for relief under Federal Rule of Civil Procedure 12(b)(6), with a request the Court reconsider an earlier choice-of-law ruling. (*See generally* Mot.).

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

"Reconsideration is granted only in extraordinary circumstances and is committed to the sound discretion of the district judge." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 141 F. Supp. 3d 1295, 1301 (S.D. Fla. 2015) (internal quotation marks and citations omitted). "[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (alteration added; citations omitted). "A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995). It is "an improper use of[] the motion to reconsider to ask the Court to rethink what the Court ... already thought through — rightly or wrongly[.]" *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted; first and last alterations added).

**B. Motion to Dismiss**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.    DISCUSSION

Great Lakes argues the Court incorrectly applied Florida law to Counts II and IV of Counter-Plaintiffs' Counterclaim at the September 4, 2019 Hearing.  (*See* Mot. 9–16).[5]  Great Lakes asks the Court to reconsider its choice-of-law ruling and instead apply New York law to Counts II and IV of the Amended Counterclaim.  (*See id*.).  Great Lakes contends under New York law, Counts II and IV must be dismissed for failure to state claims for relief.  (*See id*. 16–19, 23–26).  If the Court declines to reconsider its choice-of-law decision, Great Lakes insists Count II should be dismissed for failure to state a claim under Florida law.  (*See id*. 19–22).  The Court addresses the arguments in turn.

### A.  Motion for Reconsideration

On August 9, 2019, Great Lakes filed its first Motion to Dismiss Counts II and IV of BRM and MBR's Counterclaim ("First Motion").  Great Lakes argued a choice-of-law clause in the MBR Policy[6] required the application of the substantive laws of New York to any disputes arising outside the scope of federal admiralty law.  (*See generally* First Mot.).  Great Lakes asserted that in applying New York law, the Court would conclude Counts II and IV of the Counterclaim should be dismissed for failure to state claims for relief.  (*See generally id*.).  The First Motion was fully

---

[5] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all filings.

[6] The choice-of-law clause in the MBR Policy states:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

(MBR Policy 18 (bold omitted)).

briefed,[7] and on September 4, 2019, the Court held a Hearing to address the parties' positions.

At the Hearing, the parties discussed *Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, Case No. 4:10-cv-2060, 2011 WL 1044154 (S.D. Tex. Mar. 16, 2011) ("First *Tico Time Marine* Order"), where a Texas district court found the same choice-of-law provision at issue in this case precluded a bad faith claim under Texas law because the choice-of-law provision encompassed any claims that "would not exist if there were no underlying insurance agreement." *Id*. at *4. The court found the bad faith claim existed as a result of the insurance agreement and thus, in the absence of federal admiralty law, New York law applied. *See id*. Great Lakes relied on this interpretation to argue the two clauses in the choice-of-law provision must be read together, and the language in the first clause describing "any dispute arising hereunder" would apply to the second clause of the provision describing the "insuring agreement." (*See* Mot., Ex. B, Hr'g Tr. [ECF No. 82-2] 22:22–24:12).

In response to the First *Tico Time Marine* Order, Counter-Plaintiffs cited a subsequent unpublished order ("Second *Tico Time Marine* Order") granting a partial motion for reconsideration.[8] (*See* Hr'g Tr. 9:15–11:11). Counter-Plaintiffs stated the order granting the motion for reconsideration "reversed [the court's] position" from the First *Tico Time Marine* Order cited by Great Lakes. (*Id*. 11:10 (alteration added)). In any event, Counter-Plaintiffs argued the proper interpretation of the choice-of-law provision is one which applies federal admiralty law to any dispute between the parties, but in the absence of federal admiralty law, applies New York law only to the insuring agreement. (*See id*. 23:15–26:21).

After considering the parties' briefing, as well as their oral arguments, the undersigned

---

[7] Counter-Plaintiffs filed an Opposition [ECF No. 57]; to which Great Lakes filed a Reply [ECF No. 58].

[8] The Second *Tico Time Marine* Order, entered April 28, 2011, is not available on Westlaw but is attached as Exhibit A to the Motion. (*See* Mot., Ex. A, Second *Tico Time Marine* Order [ECF No. 82-1]).

found:

> The language that Great Lakes Insurance relies on, the language in the [MBR] policy was chosen by Great Lakes, and it clearly states that any dispute arising under the [MBR] policy is adjudicated under federal admiralty law and where no such precedent exists, only the insuring agreement is subject to the laws of New York, the substantive laws of New York. The policy simply should have said any disputes arising between the parties will be subject to the laws of New York, and it did not say that -- it does not say that.
>
> So I agree with the Counterplaintiffs['] interpretation of this choice of law provision. And given that the policy was entered into here in Florida and insures property in Florida with Florida insureds and for all of the reasons stated in the Counterplaintiffs' position, I would agree that it is Florida law that applies where there is no federal admiralty law.

(*Id*. 27:4–18 (alterations added)).

Having determined Florida law applied to the claims at issue, the Court next addressed the breach-of-fiduciary-duty claim in Count II. (*See id*. 27:19–23). As Count II included a claim for breach of fiduciary duty on behalf of BRM — which was tantamount to a bad faith claim and not properly before the Court — the undersigned required Counter-Plaintiffs to amend to allege a claim solely on behalf of MBR. (*See id*.). Because the claim would be repleaded, the Court did not make a finding on the First Motion concerning MBR's breach-of-fiduciary-duty claim. (*See id*. 28:1–14). As to the reformation claim in Count IV, following the parties' arguments, the undersigned denied the motion to dismiss, finding Counter-Plaintiffs adequately stated a claim under Florida law. (*See id*. 41:10–17).

Great Lakes now argues the Court should reconsider its choice-of-law decision because (1) the Court heard an "inaccurate presentation of an order from a case deciding this choice-of-law issue in Great Lakes' favor" and (2) the Court's decision is inconsistent with a "number of other courts nationwide that have encountered the same or similar arguments." (Mot. 8). Counter-Plaintiffs disagree, arguing Great Lakes "is utilizing this motion as a vehicle to replace its original

choice of law briefing with a much more thorough, but no more compelling, argument." (Opp'n 4). Counter-Plaintiffs argue the *Tico Time Marine* decisions have no bearing on whether reconsideration should be granted because the case is not binding on the Court, nor did the Court rely on the case. (*See id*.). Counter-Plaintiffs state there has been no change in the law or facts underlying the Court's decision and Great Lakes presents no case law that was unavailable at the time of the original briefing. (*See id*.).

The Court agrees with Counter-Plaintiffs. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp*, 181 F. Supp. 2d at 1369 (internal quotation marks and citation omitted). "Arguments that were or should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." *Mierzwicki v. Citigroup, Inc*., No. 14-cv-61753, 2015 WL 13388667, at *1 (S.D. Fla. Oct. 13, 2015) (citation omitted). Indeed, "[a] motion for reconsideration premised on previously rejected arguments should be denied because it does not meet the standard employed on review of a [m]otion for [r]econsideration." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp. 2d 1322, 1324 (S.D. Fla. 2009) (alterations added; internal quotation marks and citation omitted)).

Great Lakes explains it seeks reconsideration to "correct clear error or prevent manifest injustice" as the "Court's choice-of-law ruling was inconsistent with the holdings of at least seven cases nationwide and was based, at least in part, on an inaccurate representation of a prior order." (Mot. 3 (internal quotation marks and citation omitted)). Great Lakes expends considerable effort discussing the *Tico Time Marine* Orders and Counter-Plaintiffs' admittedly erroneous description[9]

---

[9] Counter-Plaintiffs' counsel acknowledges she "misinterpreted the breadth of the order and stated at oral argument that the court had reversed its position[.] . . . This misrepresentation was in error." (Opp'n 4 n.1 (alterations added)).

of the Second *Tico Time Marine* Order offered at the September 4, 2019 Hearing. (*See id*. 10–13). Great Lakes claims the Court "appeared to rely" on Counter-Plaintiffs' misrepresentation and the misrepresentation was "instrumental to the Court's ultimate ruling." (Reply 3). Yet, Great Lakes fails to identify any portion of the Hearing Transcript indicating the Court relied upon either of the *Tico Time Marine* Orders — which are certainly not binding — when making its choice-of-law decision. (*See generally* Mot.; Reply).

"[C]lear error or manifest injustice occurs where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. . . . Such problems rarely arise and the motion to reconsider should be equally rare.'" *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (quoting *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc*., 401 F. Supp. 2d 1270, 1283 (S.D. Fla. 2003) (first alteration added)). The facts set forth in Great Lakes's Motion "do not indicate that this Court's prior decision results in clear error or manifest injustice." *Mierzwicki*, 2015 WL 13388667, at \*2.

While Counter-Plaintiffs misrepresented the scope of the "undisclosed and unbriefed" Second *Tico Time Marine* Order (Reply 3), nothing Counter-Plaintiffs discussed was relevant to the choice-of-law issue in this case (*see* Hr'g Tr. 10:5–11:11). Indeed, Great Lakes brought this to the Court's attention during the September 4, 2019 Hearing when counsel advised: "I didn't hear anything that addressed the central part of what we were -- what we cited the March 11th order for, which was that you have to read this choice of law provision in its entirety." (*Id*. 23:5–8). The undersigned's choice-of-law determination does not rely on, or even reference, the non-binding, Second *Tico Time Marine* Order, which addressed a separate issue of contract

interpretation not before the Court.  (*See generally* Hr'g Tr.).

As stated, the Court's choice-of-law determination was based on the clear language of the MBR Policy, not Counter-Plaintiffs' erroneous description of the Second *Tico Time Marine* Order. (*See id*. 27:4–12 ("[T]he language in the [MBR] policy was chosen by Great Lakes, and it clearly states that any dispute arising under the [MBR] policy is adjudicated under federal admiralty law and where no such precedent exists, only the insuring agreement is subject to . . . the substantive laws of New York.  The policy simply should have said any disputes arising between the parties will be subject to the laws of New York, and . . . it does not say that." (alterations added)).

To the extent Great Lakes seeks reconsideration because the Court's choice-of-law ruling "was inconsistent with the holdings of at least seven cases nationwide" (Mot. 9), this argument is not well-taken.  "In order to demonstrate clear error, the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Compania de Elaborados de Cafe*, 401 F. Supp. 2d at 1283 (citation omitted); *see also Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 684 (S.D. Fla. 2007) ("[T]o the extent [the movant] merely reargues points previously considered and rejected by the Court, or tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration." (alterations added; citations omitted)).

As the authorities cited in the Motion were available to Great Lakes prior to the Court's choice-of-law decision, they are not appropriately raised in a motion for reconsideration.  *See Z.K. Marine Inc.*, 808 F. Supp. at 1563 ("A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made[.]" (alteration added)).  "[C]ourts and litigants cannot be repeatedly called upon to backtrack

through the paths of litigation which are often laced with close questions." *Burger King Corp.*, 181 F. Supp. 2d at 1370 (alteration added; citation omitted). Because Great Lakes fails to show the Court committed clear error or manifest injustice, the Court declines to reconsider its choice-of-law decision.[10]

### B. Breach of Fiduciary Duty (Count II)

Great Lakes argues MBR's breach-of-fiduciary duty claim is a surrogate for a bad faith claim and must be dismissed as premature under Florida law. (*See* Mot. 19–21). If MBR's breach-of-fiduciary-duty claim is not a surrogate for a bad faith claim, Great Lakes insists the claim must still be dismissed because there was no fiduciary relationship between MBR and Great Lakes when the alleged wrong occurred. (*See id.*; Reply 9–10). While MBR admits a breach-of-fiduciary-duty claim brought against an insurer under Florida law is generally treated as duplicative of a bad faith claim, it argues the elements for a bad faith claim are not identical to the elements of a breach-of-fiduciary-duty claim; circumstances therefore may arise where the claims exist independent of one another. (*See* Opp'n 12–14).

MBR states its allegations against Great Lakes in its breach-of-fiduciary-duty claim are not related to the Policy and "do not relate to a failure to defend, to investigate, or to settle a claim." (*Id.* 13). According to MBR, this action is unique because while MBR was the named insured on the disputed Policy, it "had not been sued, nor had any claim been made against MBR or by MBR to Great Lakes for coverage." (*Id.*). MBR argues its breach-of-fiduciary-duty claim arises from the allegations that: (1) MBR is the named insured on the MBR Policy; (2) Great Lakes was

---

[10] The undersigned previously determined Counter-Plaintiffs adequately stated a claim for reformation under Florida law. (*See* Hr'g Tr. 41:10–17). Great Lakes predicates its argument concerning the dismissal of Counter-Plaintiffs' reformation claim entirely on the application of New York law. (*See* Mot. 23–26). While Great Lakes bolsters its argument as to why New York law applies, it fails to provide any additional arguments concerning reconsideration. (*See id.*). Again, the Court declines to reconsider its choice-of-law ruling. Consequently, Great Lakes's motion to dismiss the reformation claim is denied as moot.

defending BRM in the state-court lawsuit; (3) Great Lakes filed a declaratory judgment action against BRM without including MBR; and (4) following mediation in the state-court action, although MBR made no claim for coverage, Great Lakes added MBR to the declaratory judgment action, prompting Baerlin-Gallegos to sue MBR in the state-court action. (*See id.*). According to MBR, none of these events happened in the context of handling a claim on MBR's behalf, as MBR did not have a claim until it was added as a defendant in the state-court lawsuit. (*See id.*).

To state a claim for breach of fiduciary duty under Florida law, MBR must show: (1) the existence of a fiduciary duty; (2) a breach of that duty;[11] and (3) damages incurred as a result of the breach. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "A cause of action for breach of a fiduciary duty is founded on a fiduciary relationship." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003). A fiduciary relationship arises where "a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused) . . . ." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (alteration added; citation and emphasis omitted). But "[w]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes Fla., Inc.*, 850 So. 2d at 541 (alteration added; citations omitted).

---

[11] Great Lakes allegedly breached its fiduciary duty when it amended its Complaint to include MBR as a defendant in this action. (*See* Am. Countercl. ¶ 120). As MBR is the named insured on the Policy (*see id.* ¶ 43), and MBR has an "insurable interest" arising from its "pecuniary interest" in offering the insured vessels for charter (*id.* ¶ 21), it appears MBR is a necessary party in this action. *See Amerisure Ins. Co. v. R.L. Lantana Boatyard, Ltd.*, No. 10-80429, 2010 WL 4628231, at *2 (S.D. Fla. Nov. 8, 2010) ("Under federal law, declaratory-judgment actions should include all 'parties having adverse legal interests,'. . . and parties whose 'interests would be prejudiced' were the case allowed to proceed without them." (alteration added; citations and footnote call number omitted)). While the parties do not address the issue in their briefing, the Court is skeptical the inclusion of a necessary party constitutes a breach of fiduciary duty under Florida law.

MBR states "Florida law holds that an insurer has a fiduciary duty to its insured in the third party liability context." (Opp'n 12). Not quite. This conclusory assertion ignores the specific factual circumstances surrounding the insurer and insured which create the fiduciary relationship in this context. When discussing an insurer's fiduciary duty in the third-party liability context, the Florida Supreme Court has found:

> [when] insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. . . . *This placed insurers in a fiduciary relationship* with their insureds similar to that which exists between an attorney and client.

*State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995) (alterations and emphasis added; citations omitted). Where "the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, *then the insurer must assume a duty* to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006) (alteration and emphasis added; citations omitted).

While a fiduciary relationship may be implied by law, it is "premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Doe*, 814 So.2d at 374 (internal quotation marks and citation omitted). In the third-party liability context, it is the handling of the claim by the insurer on behalf of the insured that leads to the creation of a fiduciary relationship. *See Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1352–53 (S.D. Fla. 2008) ("When an insurer undertakes the defense of an insured, the insured becomes dependent upon the acts of the insurer. . . . *This places the insurer in a fiduciary relationship with the insured*, and the insurer thus owes a duty to the insured to refrain from acting solely on the basis of the

insurer's own best interest in considering a settlement." (alteration and emphasis added; citation omitted).

As MBR insists its allegations in Count II are unrelated to Great Lakes's handling of MBR's insurance claim (*see* Opp'n 13), the Court is not persuaded by MBR's argument concerning the existence of a fiduciary relationship. "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (internal quotation marks and citation omitted). This, MBR has failed to do.

There are no factual allegations establishing an undertaking by Great Lakes or any degree of dependence by MBR prior to Great Lakes's handling of MBR's insurance claim. (*See generally* Am. Countercl.). When the alleged breach occurred, the parties were dealing with each other at arm's length and a fiduciary relationship "[did] not exist because there [was] no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes Fla., Inc.*, 850 So. 2d at 541 (alterations added; citations omitted). Accordingly, MBR's claim for breach of fiduciary duty is dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff/Counter-Defendant, Great Lakes Insurance SE's Partial Motion to Dismiss Counts II and IV of BRM and MBR's Amended Counterclaim and Motion to Reconsider Court's Choice-of-Law Ruling **[ECF No. 82]** is **GRANTED in part** as follows:

1.      The Motion is **DENIED** as to reconsideration of the Court's choice-of-law ruling.

2.      The Motion is **GRANTED** as to Count II of the Amended Counterclaim.  MBR's

        claim for breach of fiduciary duty is **DISMISSED** without prejudice.

3.      The Motion is **DENIED** as to Count IV of the Amended Counterclaim.

**DONE AND ORDERED** in Miami, Florida, this 17th day of January, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record